THE CALIFORNIA STEAM NAVIGATION CO. v. WRIGHT.

The allegation that plaintiff is a corporation under the laws of the State, is sufficient to establish the legal capacity to sue.

A contract not to run boats on a certain line of travel, and on failure to comply with such contract, to pay $15,000, is an instrument in writing for the payment of money, and assignable by our laws.

Such a contract is not void, as being against public policy and in restraint of trade, where a consideration is paid therefor.

In these cases the doctrine seems to be that there must not only be a consideration for the contract, but there must be some good reason for entering into it; and it must impose no restraint upon one party, which is not beneficial to the other.

Such a contract gives no monopoly, giving an exclusive enjoyment of the business only as against a single individual, while all the world besides is left at full liberty to enter upon the same enterprise.

Where the sum of $15,000 was paid by the plaintiff as the consideration for such a contract, and the same amount was agreed by the defendant to be paid by him on failure to comply with its conditions; *Held*, that the sum thus agreed to be paid was intended by the parties as liquidated damages.

The allegation that the plaintiff had fully performed, on his part, all conditions of the contract, is an allegation of performance sufficiently explicit under section 60 of the Practice Act.

APPEAL from the District Court of the Twelfth Judicial District.

Cal. Nav. Co. v. Wright.

The complaint in this case alleges that on the 21st of February, 1854, defendant, being the owner of certain steamboats, entered into a contract with one Richard Chenery, also the owner of boats, whereby, in consideration of the sum of $15,000, to be paid by Chenery, defendant covenanted that he would not permit any boat in which he was interested to navigate certain waters of this State at any time within three years from the date of the contract, and if he failed to comply with his contract, he would pay to said Chenery or his assigns the sum of $15,000. That afterwards, on the first of March, 1854, said contract was duly assigned by Chenery to plaintiff, then and now a corporation, organized and existing under the laws of this State, of which assignment defendant had notice. That up to the time of the assignment of plaintiff, Chenery had performed, on his part, all the covenants of the contract, and that afterwards the plaintiff fully performed the conditions imposed by said agreement on Chenery.

Plaintiff avers a breach of the conditions of the contract on the part of defendant, and asks judgment for $15,000.

Defendant demurred to the complaint, and assigns for cause of demurrer: First, that it does not appear on the face of the complaint that the plaintiff had any legal capacity to sue; second, that the contract is not, in law, assignable; third, that it does not appear from the complaint that the contract was assigned; fourth, the alleged contract is against public policy, and void; fifth, the complaint does not allege any facts by which the measure of damages can be ascertained; and, sixth, the complaint does not show a performance on the part of the plaintiff or his assignee.

The demurrer was sustained by the Court, and a judgment rendered for defendant. Plaintiff appealed.

*Robert F. Morrison*, for Appellant.

It is contended by the respondent that the contract is opposed to public policy.

This point involves an important question of law, which is now for the first time, I believe, presented for the consideration of the Court. The principle of law interdicting contracts in restraint of trade, had its origin under a peculiar system of English law, regulating apprenticeships, which has not been introduced, and has never prevailed in this country.

Here all branches of business professions and trades are open to all, and the relinquishment of one only acts as an agreement to engage in another, perhaps more congenial and lucrative than the one first pursued. See Parsons on Contracts.

In the case of Stearns v. Barrett, Pickering 450, Wilde, J., delivering the opinion of the Court, uses the following language:

"Agreements to restrain trade in particular places, founded on a reasonable consideration, are valid in law and may be enforced."

In the case of Mitchell v. Reynolds, the Court of King's Bench, as early as the year 1711, held that a contract not to carry on a certain

trade within certain limits is binding on the parties.    See Peere Williams Reports, vol. 1.

In the case of Pierce *v.* Fuller, 8 Mass., 222, the same doctrine is asserted, and the amount named in the agreement to be paid in case of a breach, was considered as liquidated damages.

To the same effect in the case of Perkins *v.* Lyman, 9 Mass., 521 ; also, Pyke *v.* Thomas, 4 Bibb's, 486 ; Parsons on contracts, vol. 2, note to page 258.

The case of Chappel *v.* Brockeray, 21 Wendell, 157, is a leading authority on the subject now under discussion.

That case involved the legality of a contract, by which the defendant bound himself not to run packet-boats on the canal between Rochester and Buffalo, in the State of New York, a distance of about one hundred miles.

The Court, per Bronson, J., delivering the opinion, held the agreement binding between the parties, and it is there said :

" Such a contract as this would have been held valid more than two centuries ago, when the policy of guarding against contracts in restraint of trade was much more apparent than it is at the present day of unparalleled competition.

*Baker & Bowlin* for Respondent.

The plaintiffs have no legal capacity to sue.    They have plead no private statute by which they acquire a right to sue in a corporate name.    § 61, Practice Act.    All corporations formed under the general act concerning corporations, passed April 22, 1850, are prohibited from " discounting bills, notes or other evidences of debt."    Revised Laws of Cal., § 3, p. 180.

No assignment is shown on the face of the complaint.

The contract declared on is not in law assignable.    Personal contracts and penalties for torts are not capable of passing by assignment. The action is personal.    The real party in interest must sue.    Practice Act, § 4 ; Chitty on Contracts, note to pp. 566, 739 ; Davis *v.* Coburn, 8 Mass. Rep. ; Thurman *v.* Wells *et als.,* 18 Barbour R., 500 ; People *v.* Tioga Com. Pleas, 19 Wendell, 73 ; 1 Peters, 213 ; 7 Howard, 492, (passenger case ;) Clinton *v.* Fly, 1 Fan. R., 292 ; Mayhew *v.* Scott, 10 Pick., 55, 56.

The contract is in general restraint of trade, contrary to public policy, and void at common law.    " General restraints are all void, whether by bond, covenant, or promise, with or without consideration, and whether it be of the parties' own trade or not."    Mitchell *v.* Reynolds, Peere Williams Rep., vol. 1, p. 186, a leading case, in which the whole question is discussed in all its branches.    The contract prohibits the defendant from navigating, by steam, all the navigable streams of the State. That he shall not run or suffer to run any steamer in which he is interested on the Sacramento, San Joaquin, or Feather rivers, in the State of California, nor in the internal navigation of the Bay of San Francisco, etc., etc., and is a complete monopoly, and is against the policy of the law.    Stanton *v.* Allen, 5 Denio, 434.

There are no facts alleged by which the measure of damages can be ascertained, and complaint does not allege performance by assignor of the conditions in the contract, by him to be kept and performed, and in this respect is insufficient.

Mr. Justice TERRY, after stating the facts, delivered the opinion of the Court. Mr. Chief Justice MURRAY concurred.

The first objection is untenable. The allegation that plaintiff was a corporation under the laws of this State, is sufficient to establish the right to sue, under the first section of the Act concerning corporations. Rev. Laws, 290.

The next objection is, that the contract declared on is not assignable. The contract is an instrument in writing, for the payment of money, and is made assignable by our laws. Besides, it has always been the policy of our law to construe contracts according to the intention of the parties, and it was evidently the intention of the parties that the contract should be assignable, as it is made payable to Chenery, his heirs, etc.; and as it appears from the complaint that the defendant was notified of the assignment, and received from the plaintiff the full sum of money which Chenery contracted to pay, he is estopped from denying that the contract was assignable. The third ground is not supported by the fact. The complaint does show that the contract was assigned by Chenery to plaintiff. The next objection is that the contract is against public policy, as being in restraint of trade.

At common law, all contracts by which one obliged himself to do an act or omission tending to injure the public, were void, and the general rule is that contracts in restraint of trade are contrary to public policy. The stringency of this rule has been gradually relaxed, as the reason for it (to wit: the security of mechanics and tradesmen) ceased.

As early as 1711, in the case of Mitchell v. Reynolds, 1 Peere Williams, 181; Parker, C. J., in delivering the opinion of the Court, says: "The general question upon this record is, whether this bond, being made in restraint of trade, is good. And we are all of opinion, that a special consideration being set forth in the condition, which shows it was reasonable for the parties to enter into it, the same is good; and that the true distinction of this case is not between promises and bonds, but between contracts *with and without* consideration; and that wherever a proper consideration appears to make it a proper and useful contract, and such as cannot be set aside without injury to a fair contractor, it ought to be maintained, but with this constant diversity, viz.: when the restraint is general not to exercise a trade throughout the kingdom, and when it is limited to a particular place; for the former of these must be void."

In Pierce v. Fuller, 8 Mass., 223, it was held that an agreement not to run a stage coach on a certain road was valid. So in the case of Chappel v. Brockway, 21 Wend., 157, where a party entered into a bond, under the penalty of twenty-five thousand dollars, that he would not at any time thereafter own, run, or be interested in, any line of packet boats on the Erie canal, it was held that the bond was valid.

In these cases, the doctrine seems to be, that there must be not only a consideration for the contract, but there must be some good reason for entering into it; and it must impose no restraint upon one party which is not beneficial to the other—21 Wend., 160.  Applying the rule as laid down in the cases cited, to the one under consideration, we are satisfied that the contract is valid.  The plaintiff paid to defendant a valuable consideration for the contract, and there was also a good reason for entering into it; no restraint was imposed on defendant which did not enure to the advantage of plaintiff.

It is objected that this contract gives to the plaintiff a complete monopoly of the waters named.  This objection cannot be better answered than in the words of Mr. Justice Bronson, in the case above cited: "That is certainly a new kind of monopoly which only licenses the plaintiff in the exclusive enjoyment of his business as against a single individual, while all the world besides are left at full liberty to enter upon the same enterprise.

The fifth objection is that the complaint does not allege any facts from which the measure of damages can be ascertained.

From the tenor of the contract itself, as well as from the allegations of the complaint, we are satisfied that it was the intention of the parties, that the sum of fifteen thousand dollars was agreed upon, as the sum which was to be paid by defendant in case of a failure on his part to perform the contract.  It was the sum which was received by defendant in consideration of the covenants on his part, and certainly if he failed to perform his agreement, there would be no hardship in requiring him to return the sum which he had received.

In the case of Williams *v.* Dakin, 22 Wend., 201, it was held that whether a sum agreed upon by the parties to a contract, as the measure of damages, shall be considered as *liquidated damages*, or only as a *penalty*, depends upon the *interest* of the parties, and the peculiar circumstances of the subject matter of the contract.

Chancellor Walworth, in that opinion, says: "The remaining question is, whether the three thousand dollars is to be considered as a stipulated sum, which both parties intended should be paid as liquidated damages in case the covenant was broken; and if so, whether there is any rule of law which can authorize this Court, or any other Court, to say the plaintiff in error shall be excused from performing his agreement; in other words, whether this Court can make a new agreement for the parties which they never intended to make for themselves.   I think no one who reads the covenant can doubt for a moment that it was the intention of both parties that if it was broken, the whole three thousand dollars should be paid as the liquidated damages for such breach.   The object of the covenant was to protect Dakin and Bacon, and their assigns, in the full enjoyment of the good will of a public newspaper, and of its patronage, for which good will and patronage they were paying the sum of three thousand dollars; and as the value of the good will or patronage of the paper, as well as the amount of injury which the purchasers might sustain by any interference with it, *were*

*wholly uncertain and incapable of estimation otherwise than by mere conjecture,* the amount to be paid upon the breach of that covenant was not only a proper subject for stipulated damages, but the precise sum paid for such good will or patronage, appears to be that which the parties would naturally fix upon as the amount to be refunded to the purchasers upon any breach of the covenant." This opinion is sustained by Hodges, Exr., *v.* King, 7 Metcalf, 583 ; Perkins *v.* Fuller, 8 Mass., 222 ; and Perkins *v.* Lyman, 11 Mass., 81 ; Chamberlan *v.* Bailey, 11 N. H., 234 ; 5 Sand., 192.

The allegation of performance on the part of plaintiff and Chenery is sufficiently explicit under the sixtieth section of our Practice Act.

Judgment reversed and cause remanded.