## TRENTMAN ET AL. *v.* WAHRENBURG ET AL.

[No. 4,274. Filed January 14, 1903.]

CONTRACTS.—*Restraint of Trade.*—An agreement by a dealer in building material, upon selling his business, to refrain from engaging in the business in the county for a period of five years is valid. *pp. 312, 313.*

SAME.—*Restraint of Trade.*—An agreement to buy from one person only is not in restraint of trade when made for a limited time and confined to one locality. *p. 313.*

SAME.—*Restraint of Trade.*—*Sale of Business.*—The fact that agreements which by their provisions restrain a person from bidding on public works are void, does not prevent a contractor engaged in the general business of building public buildings, sewers, or streets from disposing of his business and good-will, and in good faith retiring from business. *pp. 314, 315.*

SAME.—*Restraint of Trade.*—*Divisible Contract.*—A complaint on a contract to recover liquidated damages for its alleged violation by defendants in purchasing of others than plaintiffs certain building material, is not demurrable on the ground that the contract was void as against public policy because of a provision therein prohibiting defendants from bidding on public works, since if such provision is void the contract being divisible is not thereby rendered void as an entirety. *p. 315.*

From Superior Court of Allen County; *J. H. Aiken*, Judge.

Action by Anthony B. Trentman and others against Henry Wahrenburg and others for damages for breach of contract. From a judgment for defendants on demurrer to complaint, plaintiffs appeal. *Reversed.*

*J. M. Barrett* and *S. L. Morris*, for appellants.
*W. G. Colerick* and *G. F. Felts*, for appellees.

Henley, J.—This was an action upon a written contract commenced by appellants against appellees to recover the liquidated damages stated in the contract for its alleged violation by appellees in purchasing of others than appellants certain building material purchased and used by appellees in Allen county, Indiana.

The trial court sustained a demurrer to the complaint on the ground that the contract entered into between appellants and appellees, upon which the complaint was founded, was illegal and void as being against public policy. The full text of the contract sued upon, omitting the signatures, was as follows: "This agreement, made this 4th day of March, 1899, by and between the Builders' Lime Association, a corporation; Anthony B. Trentman, for himself and as the sole proprietor of the Trentman Supply Company and the Western Lime Company, under which names he is also doing business; Edward M. Baltes and Michael Baltes, doing business as Ed. M. Baltes & Co.; Michael Baltes; the Baltes Land, Stone & Oil Co., a corporation; and Charles E. Moellering and Edward H. Moellering, doing business under the name of William Moellering's Sons; William Moellering, Charles F. Muhler, Bernard C. Muhler, H. A. Gerberding, Henry Wahrenburg, and Frederick Busching, partners doing business under the firm name of Wahrenburg, Busching & Co.; Henry C. Kanning and Henry Hachmeyer, partners doing business under the firm name of Kanning & Co.; and Frederick

Miller, Frederick C. Miller, and Herman Miller, partners doing business under the name of Fred Miller & Sons; Fred C. Pohlmeyer, William Westhoff, Frederick Rippe, Ernst H. F. Breimeier, Peter Hensel, Albert D. Palmer, Otto Blombach, Henry Schultz, and Sylvester Drummond, —all of Fort Wayne, Indiana, witnesseth, that said several parties, in consideration of the mutual and several covenants and agreements herein contained, agree with each other, and each severally agrees with the others, and each of them, as follows: (1) The said Builders' Lime Association, in consideration of the sum of $5,550 to be paid it cash in hand, hereby agrees to sell, transfer, convey, and deliver to Anthony B. Trentman, William Moellering's Sons, a firm composed of Charles E. and Edward H. Moellering, and Edward M. Baltes & Co., a firm composed of the said Edward M. and Michael Baltes, all the stock on hand, fixtures, property (except books and stationery, accounts receivable, notes, cash), and property of every kind and description, and good-will of the said Builders' Lime Association, including the leases of the premises now occupied by the said association, and also agrees that it will not enter upon, carry on, or conduct the business of buying and selling, or buy and sell, any lime, white sand, cement, sewer-pipe, plaster, fire-clay, fire-brick, lath, stone, or any other building material of any kind (excepting only common sand, building brick, pressed brick and cut stones) in the county of Allen, and State of Indiana, for a period of five years from the date hereof, and will immediately quit and cease business.

"(2) Said William Moellering, Michael Baltes, Edward M. Baltes, Charles E. Moellering, Edward H. Moellering, Anthony B. Trentman, Charles F. Muhler and Bernard C. Muhler and Henry A. Gerberding, herein designated as dealers, hereby severally agree to cease and quit the contracting business in the line of brick and stone masonry and plastering, in the erection and construction of

buildings and setting of boilers, and in the making of ce-
ment floors and private sewers, when the contract for such
cement floors and private sewers are let in connection with
the building with which the same are connected, except
where such private sewers are built in connection with a
frame privy or outhouse, in Allen county, Indiana, and
that they will not, directly or indirectly, as individuals,
partners, members of any association, or stockholders in
any corporations, carry on or be interested in, or aid or
assist by furnishing capital or otherwise, in the doing of
said brick and stone masonry and plastering in the erection
and construction of buildings and setting of boilers, or in
constructing cement floors and private sewers when the con-
tract for such floors and sewers are let with the contract
for the building with which the same are connected, ex-
cept in connection with said frame privy or outhouse, in
said county, for a period of five years from the date hereof;
but this agreement shall not apply to or include bridge
work, public sewers, street improvements, or repairs, the
building of sidewalks when let by the city or board of pub-
lic works, cement foundations for engines where no stone
or brickwork are used in such foundations, or cement floors
or private sewers where the contract for such cement floors
or private sewers are let separate and apart from the con-
tract for the brick and stone masonry for the building with
which connected, but it shall include private sewers and
cement floors where the contract is let or bids called for in
connection with the brick or stone masonry with which
connected, and said parties shall not bid upon or construct
such cement floors and private sewers when let in the same
contract or bid, if in connection with the brick or stone
masonry of the building, unless one or more of the parties
hereto, designated as contractors, or other contractor or
owner, shall request bids thereon from such dealers, and
if more than one of said contractors herein named shall

request such bids, the same bid and price for such work shall be given to each.

"(3)    The said Anthony B. Trentman, William Moellering's Sons, and Edward M. Baltes & Co., hereinafter designated and distinguished as dealers, in consideration of the several covenants, promises, and agreements herein contained, on the part of the other parties hereto, and herein mentioned, do hereby agree to purchase of and from said Builders' Lime Association all the stock, furniture, fixtures, and property (except books, stationery, accounts receivable, notes, cash, etc.) of every kind and character, and the goodwill of the said Builders' Lime Association, including the assignment of the lease for the property now occupied by it, and to pay said association in consideration therefor, and in consideration of the other covenants and agreements herein contained on the part of said other parties, the sum of $5,550, and to assume and to pay all rents hereafter accruing on said lease.

"(4)    The said Henry Wahrenburg, Frederick Busching, Henry C. Kanning, Henry Hachmeyer, Frederick C. Pohlmeyer, William Westhoff, Frederick Miller, Frederick C. Miller, Herman Miller, Frederick Rippe, Ernst H. F. Breimeier, Peter Hensel, Albert D. Palmer, Henry Schultz, Otto Blombach and Sylvester Drummond, herein designated as contractors, hereby severally agree that they will not, either as individuals, or as members of any firm, association, or stockholders in any corporation, or in any way, either directly or indirectly, enter into, conduct, or carry on, or be a party to, or interested in, or in any way aid or assist by furnishing capital or otherwise, the business of buying and selling lime, white sand, cement, sewer-pipe, plaster, fire-clay, fire-brick, lath, stone, or any other kind of building material (excepting only common sand, building brick, pressed brick, and cut stones), or in the building and constructing of public sewers, bridge work, street improvements or repairs, or sidewalks let by the contract by the

Trentman v. Wahrenburg.

city or board of public works in said Allen county, for a period of five years from the date hereof; and said parties further severally agree that they will purchase all of said materials used by them, or by any firm, association, or corporation in which any of them may be interested as individuals, partners, members of any association, or otherwise, in the construction of any building or work, or for the purpose of carrying on the business of building contractors in said Allen county, Indiana, during said period of five years, from the said Anthony B. Trentman, William Moellering's Sons, and Edward M. Baltes & Co., herein designated as dealers, or either of them, and from no one else, at and for the market price of such material in said city of Fort Wayne, as fixed by said dealers from time to time, less a discount of twelve per cent. from such market price upon any and all such materials which are sold at said market price during each month, when the average profit to any of said dealers upon all articles so sold to any of said contractors during said month shall exceed twenty per cent., and which shall be paid for on or before the tenth day of the next preceding month, as hereinafter specified.

"(5) The said Anthony B. Trentman, William Moellering's Sons, and Edward M. Baltes & Co. hereby severally agree to sell and supply all such materials on hand or in stock to said several parties herein designated as contractors, as the same may be ordered at and for such market price, less said twelve per cent. discount as above mentioned, which discount shall be allowed only upon condition that all material sold and delivered to any of said several parties during any month, shall be paid for by the party so purchasing on or before the 10th day of the month next succeeding the purchase thereof, and the failure by any of the said parties so to pay on or before the 10th day of each next succeeding month shall be a sufficient excuse and justification for not filling the further orders or supplying further material to any of said parties so failing to pay

before said time. But said discount of twelve per cent. shall not be allowed to any carpenter or individual owner of property, who is not a contractor, in purchasing material for his own building. And in the event any owner of property shall purchase building material from any of said dealers at such market price, and such material is used by any of said contractors hereto in doing the brick or stone masonry or plastering on such buildings, then such contractor shall be allowed said discounts on the material actually used and handled by such contractor in such building.

"(6)    It is further agreed that if either the said Anthony B. Trentman, Michael Baltes, Edward M. Baltes, William Moellering, Charles E. Moellering, Edward H. Moellering, Charles F. Muhler, Bernard C. Muhler, or Henry A. Gerberding shall violate this agreement by failing to quit the contracting business in the line of brick and stone masonry and plastering in the erection and construction of buildings and setting of boilers, or in the building of cement floors or private sewers when let in connection with the contract for the building with which said floors or private sewers are connected, except when said private sewers are connected with frame privies or outhouses, or shall directly or indirectly, as individuals, partners, members of any association, or stockholders in any corporation, enter into, conduct, or carry on, or be interested in, or aid or assist, by furnishing capital or otherwise, in the construction of brick and stone masonry or plastering in the erection and construction of buildings and setting of boilers, or in the building of cement floors or private sewers, if let in connection with the contract for the building with which the same are connected, except as aforesaid, in Allen county, Indiana, for the period of five years from the date hereof, then the said party so violating said agreement shall pay to said parties herein designated as contractors, the sum of $500 for each and every such violation of said agreement, to be collected for the equal and *pro rata* use and

Trentman v. Wahrenburg.

benefit of said contractors, which sum it is hereby agreed, shall be paid and received as agreed and liquidated damages, and in compromise and settlement of, and to avoid the expense of litigation and proof of the amount of, actual damages thereby sustained by said contractor; and the party so violating this agreement agrees to pay said sum without relief from valuation or appraisement laws, and with attorney's fees.

"(7)   It is further agreed that if either or any of the said contractors, to wit:   Henry Wahrenburg, Frederick Busching, Henry Kanning, Henry Hachmeyer, Frederick Pohlmeyer, William Westhoff, Frederick Miller, Frederick C. Miller, Herman Miller, Frederick Rippe, Ernst H. F. Breimeier, Peter Hensel, Albert D. Palmer, Henry Schultz, Otto Blombach or Sylvester Drummond shall violate this agreement, directly or indirectly, as individuals, partners, members of any association, or stockholders in any corporation, or otherwise, by entering into, conducting, or carrying on, or be interested in, or aid or assist by furnishing capital or otherwise, the business of buying and selling or supplying, or buying, selling and supplying to any contractor or builder, lime, white sand, cement, sewer-pipe, plaster, fireclay, fire-brick, lath, stone, or any of said material, or any other kind of building material (excepting only common sand, building brick, pressed brick and cut stone) in Allen county, Indiana, for the period of five years from the date hereof, or shall purchase or procure any of such material from any other person, firm, association, company, or corporation other than said dealers within said five years, to be used in Allen county, Indiana, then the said contractor, party hereto, so violating this agreement, shall pay to said parties, hereunto designated as dealers, the sum of $100 for each and every such violation to be collected for the equal, *pro rata* use and benefit of said dealers, which sum it is hereby agreed shall be paid as agreed and liquidated damages, and in compromise and settlement of, and to

avoid the expense of litigation and proof of, the actual damages thereby sustained by said dealers; and the said contractor, party hereto, so violating this agreement, hereby agrees to pay said sum without relief from valuation or appraisement laws, and with attorney's fees.

"It is further understood and agreed that none of the provisions of this contract shall in any way apply to or include the hard plaster on the Hoagland school building, in the city of Fort Wayne, Indiana, which is hereby expressly exempted from the operation or effect of this agreement. This contract shall be terminated and of no force after five years from date hereof. In witness whereof, said parties hereto have hereunto set their hands and seals the day and year first above written."

It is averred that the appellants, who are the purchasers of the property and good-will of the Builders' Lime Association, had fully kept and performed the stipulations of the contract upon their part, but that appellees, Henry Wahrenburg and Frederick Busching, have wholly failed and refused to keep said agreement in this respect; that they had purchased from one William Kruse, who was in no way connected with appellants, building brick, pressed brick, and cut stone for each of six separate buildings constructed by appellees in the city of Fort Wayne, in Allen county, Indiana, and that such buildings were constructed within the five years stated in the contract.

There was no fraud or undue influence in the execution of the contract. The parties thereto were neither minors, insane persons, idiots, or in any way disqualified from entering into it. It presents a valid consideration. It was not prohibited by statute. It is not of itself immoral. The bare question then remains, is it a contract hostile to public policy?

The good-will of a trade or business is a species of property. It possesses a market value, and may be sold and disposed of as other property. The seller may enter into a

Trentman *v.* Wahrenburg.

contract to refrain from engaging in the business of which the good-will was an incident, and the courts have invariably sustained such contracts when the restraints placed upon the future engagements of the seller and the extent of the interdicted territory were reasonable. *O'Neal* v. *Hines,* 145 Ind. 32; *Beatty* v. *Coble,* 142 Ind. 329; *Eisel* v. *Hayes,* 141 Ind. 41; *Consumers Oil Co.* v. *Nunnemaker,* 142 Ind. 560, 51 Am. St. 193; *Marsh* v. *Russell,* 66 N. Y. 288; *Oakes* v. *Cattaraugus Water Co.,* 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544; *Perkins* v. *Clay,* 54 N. H. 518; *Hoagland* v. *Segur,* 38 N. J. L. 230; *Curtis* v. *Gokey,* 68 N. Y. 300; *Baumgarten* v. *Broadway,* 77 N. C. 8; *Gompers* v. *Rochester,* 56 Pa. St. 194; *Oregon Steam Nav. Co.* v. *Winsor,* 87 U. S. 64, 22 L. Ed. 315; *Hubbard* v. *Miller,* 27 Mich. 15, 15 Am. Rep. 153; *Fairbank* v. *Leary,* 40 Wis. 637; *Beard* v. *Dennis,* 6 Ind. 200, 63 Am. Dec. 380; *Anchor Electric Co.* v. *Hawkes,* 171 Mass. 101, 50 N. E. 509, 41 L. R. A. 189, 68 Am. St. 403.

The most certain test to determine whether or not a restraint upon the exercise of a business, trade, or profession is reasonable, is to consider whether the restraint is such as is necessary to afford protection to the interests of the party in whose favor it is given, and not so large as to interfere with the interest of the public generally. In the case under consideration the limitation as to time and the restriction as to place were both reasonable. The law is equally well settled that an agreement to buy from one person only is not in restraint of trade when made for a limited time and confined to one locality. *Brown* v. *Rounsavell,* 78 Ill. 589; *Live Stock Assn.* v. *Levy,* 54 N. Y. Super. Ct. 32; *Ferris* v. *American Brewing Co.,* 155 Ind. 539; *Diamond Match Co.* v. *Roeber,* 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; *Olmstead* v. *Distilling, etc., Co.,* 77 Fed. 265; *Fuller* v. *Hope,* 163 Pa. St. 62, 29 Atl. 779; *Arnold* v. *Kreutzer,* 67 Iowa 214, 25 N. W. 138; *George* v. *East Tennessee Coal Co.,* 83 Tenn. 455, 54 Am. Rep. 425.

Neither appellants nor appellees were public servants. They were not dealing with the public by virtue of any grant or franchise. They had no special rights or privileges from the public, and owed the public no duty other than as private citizens. They could sell their property to any person at any price they might be offered, or they could give it away. The public was not concerned. Appellees had a right to and they did contract to purchase certain building material from appellants, and agreed to purchase of no one else; and this agreement upon their part was a part of the good-will which appellees purchased from them. The contract does not attempt by the combination of capital, or in any other manner, to control the production of any article. It does not attempt to regulate the prices to be paid by the public for any commodity. The contract, in so far as we have considered it, is one fairly within the recognized rules of law; it being simply a contract between individuals, affecting the rights and privileges of the contracting parties only. Appellees were engaged in a certain business. They desired to sell the property right they had in that business. They naturally desired to sell their property at the highest price obtainable. Their business was not of a public or a *quasi* public nature, and in order to increase its price they agreed to do certain things, and not to do certain things, within reasonable limits as to time and place. If the contract entered into was disastrous and improvident, the loss falls upon the contracting parties, and not upon the public.

Lastly, it is contended by the appellees that the contract is one which, by agreement, certain persons, parties thereto, are to refrain from bidding on public work. It is undoubtedly the law that all agreements which by their provisions restrain a person from bidding on public work are void. Beach, Contracts, §§1538, 1539; *Hunter* v. *Pfeiffer*, 108 Ind. 197, and cases cited. But this does not prevent a contractor engaged in the general business of

Trentman *v.* Wahrenburg.

building public buildings, sewers, or streets from dispos-
ing of his business and good-will, and in good faith retir-
ing from the business.   The law is aimed at that species of
fraud and conspiracy by which two or more persons, com-
panies, or corporations impose upon the public either by
collusive bids, or by agreements to refrain from bidding
in certain cases, so that the business may be divided
amongst them and exorbitant prices obtained.   By such
agreements no one disposes of his business and good-will,
and agrees not to engage in the business for a certain
period; but, remaining in the business, they agree that, as
to a certain work, competition shall be stifled and the pub-
lic shall suffer.   The contract under consideration does not
present such a case.

   But if appellees' contention should be sustained,—which
it can not,—still, as the complaint does not aver that this
part of the contract has been violated, the contract being
divisible, that part of it which is legal could be enforced.
The Supreme Court of the United States, in *Oregon Steam
Nav. Co.* v. *Winsor,* 87 U. S. 64, 22 L. Ed. 315, said:   "It
is laid down by Chitty as the result of the cases, and his
authorities support the statement, 'that agreements in re-
straint of trade, whether under seal or not are divisible;
and accordingly, it has been held that when such an agree-
ment contains a stipulation which is capable of being con-
strued divisibly, and one part thereof is void as being in
restraint of trade, whilst the other is not, the court will
give effect to the latter, and will not hold the agreement
void altogether.' "

   We think the contract valid in all its parts.   The com-
plaint, by its averments, shows that appellees have violated
the conditions of their agreement, and states a cause of
action.   The judgment is therefore reversed, with instruc-
tions to the trial court to overrule the demurrer to the com-
plaint.