## J. W. RIPY & SON v. ART WALL PAPER MILLS.

No. 3281.   Opinion Filed November 25, 1913.

(136 Pac. 1080.)

1.   CONTRACTS—Restraint of Trade.   An agreement of a retailer to buy a particular line of goods exclusively from a certain manufacturer thereof, for a limited period of time, and confined to a particular locality, in consideration of other covenants therein of mutual advantage to the parties, and when otherwise unobjectionable under the law, is not invalid because in restraint of trade.

2.  **SAME.** A contract between individuals, the main purpose and effect of which is to promote, advance, and increase the business of those making it, will not be held to be in restraint of trade and commerce merely because its operating might possibly, in some slight or theoretical way, incidentally and indirectly restrict such trade and commerce.

3.  **SALES—Action for Price—Burden of Proof.** In a suit for a balance due for goods under the terms of a written contract, where the answer admits the execution of the contract and the receipt of the goods at the price claimed, and defends on the grounds that the contract is illegal and unenforceable, and was procured through fraud, the burden of proof is on the defendant.

4.  **SAME—Written Contract—Merger of Oral Negotiations.** All prior and contemporaneous oral negotiations are merged into a written contract finally entered into, and which fully covers the subject-matter of such negotiations.

(Syllabus by Brewer, C.)

*Error from District Court, Oklahoma County;*
*W. R. Taylor, Judge.*

Action by the Art Wall Paper Mills against J. W. Ripy & Son. Judgment for plaintiff, and defendants bring error. Affirmed.

*M. Fulton,* for plaintiffs in error.

*E. G. McAdams,* for defendant in error.

Opinion by BREWER, C. The Art Wall Paper Mills, a corporation of Dallas, Tex., brought this suit in the district court against J. W. Ripy & Son, a copartnership, to recover the purchase price of certain goods, wares, and merchandise, sold and delivered in pursuance of a certain written contract executed by the parties. We will hereafter refer to the parties as they were called in the trial court. The case was tried to a jury, and a verdict returned in favor of the plaintiff. The defendants, plaintiffs in error here, bring up the case on case-made, and in their brief seem to rely upon the following alleged errors: First. Overruling defendants' demurrer to the petition. Second. Placing the burden of proof upon the defendants. Third. The exclusion of evidence offered by defendants.

1. The defendants claim that plaintiff's petition is demurrable for the reason that the suit is based upon a certain written

contract or trade agreement attached to and made a part of the petition, and which it is alleged shows upon its face that it is an agreement in restraint of trade and commerce, and is therefore void; and, that being void, the plaintiff cannot recover for the goods sold and delivered in pursuance of its terms. The portion of the agreement which it is claimed has the above effect is a provision inserted in it requiring the defendants to handle only the wall papers manufactured and kept for sale by plaintiff during the life of the contract, which was from April 5th to January 5th following. In other words, that the defendants agreed that from the limited period of time named in the contract they would buy all their wall papers from the plaintiff. We do not believe that this agreement has the effect contended for. It is not pointed out, and from a reading of the contract we do not believe it can be pointed out, wherein this contract has the effect of restraining trade, or competition in trade, so as to bring it within the denunciation of the law. The plaintiff is a wholesale dealer in wall paper, and had traveling salesmen in Oklahoma and Indian Territory at the time this contract was made in 1904. The defendants are retail dealers in Oklahoma City. In return for defendants' agreement that for a certain period of time they would buy their wall paper exclusively from plaintiff, and would keep in stock a complete line of the same, the reciprocal agreement was made by plaintiff that its traveling salesmen, in the two territories named, would send their "stock fill in orders" to be filled from defendants' stock, and for which sales they received the profits. If plaintiff was going to give defendants the benefit of certain sales made by its traveling salesmen from samples of its line of papers in stock, it certainly was not unreasonable to require defendants to carry, for the time being, only its line of papers. It seems to us that the effect of this agreement, when all of its terms are considered, is to promote and foster the trade of both parties, rather than otherwise. The contract does not undertake to fix the price at which defendants might sell the goods. It does not restrict the plaintiff from selling its goods to others, nor does it restrict either party from selling goods to any other person or class of persons. The parties themselves are

not competitors, nor does the contract affect the competitors of defendants, nor can we see wherein it could injuriously affect the public. We think these views find ample support in the authorities.

An agreement of a retailer to buy a particular line of goods exclusively from a certain manufacturer thereof, for a limited period of time, and confined to a particular locality, in consideration of other covenants therein of mutual advantage to the parties, and when otherwise unobjectionable under the law, is not invalid because in restraint of trade. *Threlkeld v. Steward,* 24 Okla. 403, 103 Pac. 630, 138 Am. St. Rep. 888; *Trentman v. Wahrenburg et al.,* 30 Ind. App. 304, 65 N. E. 1057; *Brown v. Rounsavell,* 78 Ill. 589; *Live Stock Ass'n v. Levy,* 54 N. Y. Super. Ct. 32; *Diamond Match Co. v. Roeber,* 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; *Olmstead v. Distilling & C. F. Co.* (C. C.) 77 Fed. 265; *Arnold Bros. v. Kreutzer & Wasem,* 67 Iowa, 214, 25 N. W. 138; *Kronschnabel-Smith Co. v. Kronschnabel,* 87 Minn. 230, 91 N. W. 892.

A contract between individuals, the main purpose and effect of which is to promote, advance, and increase the business of those making it, will not be held to be in restraint of trade and commerce merely because its operations might possibly, in some slight or theoretical way, incidentally and indirectly restrict such trade and commerce. This view is fully sustained by the Supreme Court of the United States in various decisions.

In *Anderson et al. v. United States,* 171 U. S. 604, 19 Sup. Ct. 50, 43 L. Ed. 300, it is said:

"Where the subject-matter of the agreement does not directly relate to and act upon and embrace interstate commerce, and where the undisputed facts clearly show that the purpose of the agreement was not to regulate, obstruct, or restrain that commerce, but that it was entered into with the object of properly and fairly regulating the transaction of the business in which the parties to the agreement were engaged, such agreement will be upheld as not within the statute, where it can be seen that the character and terms of the agreement are well calculated to attain the purpose for which it was formed, and where the effect of its formation and enforcement upon interstate trade or commerce is in any event but indirect and incidental, and not its

purpose or object. As is said in *Smith v. Alabama,* 124 U. S. 465, 473, 8 Sup. Ct. 564, 31 L. Ed. 508, 510, 1 Interst. Com. R. 804: 'There are many cases, however, where the acknowledged powers of a state may be exerted and applied in such a manner as to affect foreign or interstate commerce without being intended to operate as commercial regulations.' The same is true as to certain kinds of agreements entered into between persons engaged in the same business for the direct and *bona fide* purpose of properly and reasonably regulating the conduct of their business among themselves and with the public. If an agreement of that nature, while apt and proper for the purpose thus intended, should possibly, though only indirectly and unintentionally, affect interstate trade or commerce, in that event we think the agreement would be good. Otherwise there is scarcely any agreement among men which has interstate or foreign commerce for its subject that may not remotely be said to, in some obscure way, affect that commerce and to be therefore void."

In *Whitwell v. Continental Tobacco Co.,* 125 Fed. 454, 60 C. C. A. 290, 64 L. R. A. 689, Judge Sanborn, after discussing contracts and agreements which would constitute a combination or conspiracy in restraint of trade, adds:

"If, on the other hand, it promotes or but incidentally or indirectly restricts competition, while its main purpose and chief effect are to foster the trade and to increase the business of those who made and operate it, then it is not a contract, combination, or conspiracy in restraint of trade, within the true interpretation of this act, and it is not subject to its denunciation."

—and cites to support the statement the following authorities:

"*Hopkins v. U. S.,* 171 U. S. 578, 592, 19 Sup. Ct. 40, 43 L. Ed. 290; *Anderson v. U. S.,* 171 U. S. 604, 616, 19 Sup. Ct. 50, 43 L. Ed. 300; *U. S. v. Joint Traffic Ass'n,* 171 U. S. 505, 568, 19 Sup. Ct. 25, 43 L. Ed. 259; *Addyston Pipe & Steel Co. v. U. S.,* 175 U. S. 211, 245, 20 Sup. Ct. 96, 44 L. Ed. 136; *U. S. Chemical Co. v. Provident Chemical Co.* (C. C.) 64 Fed. 946; *California Steam Navigation Co. v. Wright,* 6 Cal. 258, 65 Am. Dec. 511; *Smalley v. Greene,* 52 Iowa, 241, 3 N. W. 78, 35 Am. Rep. 267; *Schwalm v. Holmes,* 49 Cal. 665; *In re Green* (C. C.) 52 Fed. 104, 115-117; *In re Grice* (C. C.) 79 Fed. 627, 644; *Allgeyer v. Louisiana,* 165 U. S. 578, 589, 17 Sup. Ct. 427, 41 L. Ed. 832; *State v. Goodwill* [33 W. Va. 179] 10 S. E. 285, 286, 6 L. R. A. 621, 25 Am. St. Rep. 863; *People v. Gillson,* 109 N. Y. 389, 398, 17 N. E. 343, 4 Am. St. Rep. 465; *Butchers' Union Co. v. Crescent City, etc., Co.,* 111 U. S. 746, 755, 4 Sup. Ct. 652.

28 L. Ed. 585; *Welch v. Phelps & Bigelow Windmill Co.* [89 Tex. 653] 36 S. W. 71; *Commonwealth v. Grinstead,* 111 Ky. 203, 63 S. W. 427 [56 L. R. A. 709] ; *Walsh v. Dwight* [40 App. Div. 513] 58 N. Y. Supp. 91, 93; *Brown v. Rounsavell,* 78 Ill. 589; Noyes on Intercorporate Relations, sec. 388, p. 563."

2.   The court correctly placed the burden of proof upon the defendants.  The plaintiff sued for a balance due for goods sold under a contract, setting out the contract and a complete verified statement of account, showing debits and credits and balance due. The defendants admitted the execution of the contract, the receipt of the goods, and also referred in the answer to the contract and invoices, but claimed an additional credit of a few dollars.   The answer then averred matter tending to avoid liability for payment for the goods received, because of the alleged illegality of the contract and fraud in procuring the same.   The plaintiff then in open court conceded the additional credits claimed, and remitted the same.  This left the attack upon the validity of an admitted contract as the only issue.  The defendants had the burden of proof upon them to sustain the issues thus tendered.

3.   The evidence, which it is contended the court erred in refusing to admit, was intended to cover several different contentions.   It is only referred to in the brief by general statements of counsel, in the main, and is not brought into the brief.   We have gone into the record, however, and made some search, and find that the real complaint is in the rejection of oral evidence, clearly intended to either vary, modify, contradict, enlarge, or destroy the plain and unambiguous meaning of the written contract.   For instance, evidence was offered and refused that during the prior and contemporaneous negotiations terminating in the written contract it was agreed that plaintiff would not sell its goods to any other dealer in Oklahoma and Indian Territory; there was no hint of such an agreement in the writing which the parties formally executed, and it very fully defined the rights and duties of both parties.   The expressed purpose of the evidence was to so ingraft by oral evidence onto a written contract, legal and valid and in no sense immoral or against public policy, a new and foreign meaning so as to render the contract when so enlarged invalid as against public policy, to the end that the law

would then strike down the contract when so enlarged, affording defendants a means of escape from liability. This evidence was properly rejected, and the same may be said of the rulings on the other rejected evidence.

The jury passed on the evidence, and its verdict was approved by the trial court. To our minds the verdict was right.

The cause should be affirmed.

By the Court: It is so ordered.