Petition of GRAND RIVER DAM AUTHOR-
ITY for Declaratory Judgment Determin-
ing Validity of Contracts with Public
Service Company of Oklahoma.

No. 37928.

Supreme Court of Oklahoma.

Dec. 17, 1957.

Rehearing Denied Jan. 14, 1958.

Application for Leave to File Second Peti-
tion for Rehearing Denied Jan. 28, 1958.

Ned Looney, Charles E. Dierker, James C. Hamill, Oklahoma City, for petitioners, Peyton Brown, Blackwell, Leslie Pain, Oris L. Barney, Anadarko, Ben Huey, Norman, Cecil R. Chamberlin, Frederick, Orel Busby, Ada, H. C. Ivester, Sayre, O. B. Moody, Lindsay, Harry C. Hicks, Hollis, Louis H. Byers, Cleveland, Joe Stamper, Antlers, McFayden & Pugh, Anadarko, Bob Perdue, Wilburton, J. F. Hudson, Stigler, Earl Youree, Wagoner, Shutler, Shutler & Baker, Kingfisher, Preston Moore, Stillwater, Fred R. Harris, Lawton, Charles R. Sims, Seminole, Richard K. Harris, Bartlesville, Fred King, Guymon, of counsel.

W. H. Brown, Paul G. Darrough, Paul G. Darrough, Jr., Oklahoma City, Jack L. Rorschach, Vinita, for respondents, Kamo Electric Co-Op. and others.

Frank Carter, Gen. Counsel, Oklahoma Farm Bureau, Enid, for respondents, Oklahoma Farm Bureau.

W. Baker Wall, Sallisaw, Charles B. Steele, Okmulgee, Ralph B. Brainard, Claremore and R. D. Hudson, Tulsa, amici curiae.

DAVISON, Justice.

This is an original proceeding in this court wherein, under the authority granted by Senate Bill 268 of the 1957 Legislature, the applicant, Grand River Dam Authority, seeks a declaratory judgment determining the validity of a contract made by it with the Public Service Company of Oklahoma, a corporation.

It is impractical in this opinion to attempt a résumé of the contract which, with exhibits, comprises some 54 pages in the

record, or to outline the hundreds of pages of technical engineering reports out of which it emerged. The contract is dated August 5, 1957, and has for its purpose the interchange of electrical energy to the extent that, on the occasions when the applicant is producing electricity in excess of its market demands, the overplus is sold to the "Company" and, on the occasions when the market demands for electricity exceed the production of applicant, the underage is purchased from the "Company". The object to be attained by the thirty five year contract is the creation of such a stable assured economic future that an expansion program can be undertaken and financed by the "Authority." That program includes the construction of an hydro-electric dam at Markham Ferry on the Grand River to supplement the two already constructed on said waterway at Pensacola and Fort Gibson, respectively. The financing of such an expansion program is dependent upon the pledge of future income for repayment. Consequently, the assurance of a stable anticipated income of sufficient magnitude constitutes the foundation of the program. Some two or three years study augmented by exhaustive reports by engineers and financial advisors, experienced in businesses of similar type and size, preceded the execution of the contract.

Thousands of parties have appeared herein as respondents or by attorneys as amici curiae. There are numerous electric co-operatives; the Oklahoma Farm Bureau represents many farm families; numerous signers of a petition of protest are represented; represented also are a large number of business and professional persons from the area; other farmers and business men appear as Eastern Oklahoma Flood Control Association. Many briefs have been filed and extensive oral arguments have been heard.

This procedure, however, is not an adversary one within the general jurisdiction of this court. Our inquiry and decision must be focused within the bounds of authority contained in the statutory enactment which provides for the filing here of such an application. It is section 4 of Senate Bill No. 268 appearing in S.L.1957 at pages 568–9, as follows, to wit:

"Section 4. Supreme Court May Approve Bonds and Determine Validity of Contracts or Actions-Procedure. The District is authorized in its discretion to file an application with the Supreme Court of Oklahoma for approval by said court of any bonds to be issued under this Act, or to file a petition for a judgment determining the validity of any proposed contract or action arising from the exercise of any of the powers, rights, privileges and functions conferred upon the District under this Act; and exclusive original jurisdiction is hereby conferred upon the Supreme Court to hear and determine each such application or petition. It shall be the duty of the court to give such applications and petitions precedence over the other civil business of the court except habeas corpus proceedings, and to consider and pass upon the applications and petitions and any protests which may be filed thereto as speedily as possible. Notice of the hearing on each application and petition shall be given by a notice published in a newspaper of general circulation in the State that on a day named the District will ask the court to hear its application and approve the bonds, or hear its petition and enter a declaratory judgment. Such notice shall inform property owners, taxpayers, ratepayers, citizens, and all persons having or claiming any right, title, or interest in such matter or properties or funds to be affected by the issuance of such bonds, or proposed contract or action, or affected in any way thereby, that they may file protests against the issuance of the bonds, or declaratory judgment, and be present at the hearings and contest the legality thereof. Such notice shall be published one time not less than ten (10) days prior to the date named for the hearing and the hearing may be ad-

journed from time to time in the discretion of the court. If the court shall be satisfied that the bonds have been properly authorized in accordance with this Act and that, when issued, they will constitute valid obligations in accordance with their terms, the court shall render its written opinion approving the bonds and shall, upon application of the District, also issue an order permanently enjoining all persons described in the aforesaid notice from thereafter instituting any action or proceeding contesting the validity of such bonds, or of the rates, fees or charges authorized to be charged for the payment thereof, or the pledge of revenues to secure such payment, and shall fix the time within which a petition for rehearing may be filed. If the court shall be satisfied that the proposed contract or action is in accordance with this Act, the court shall enter a judgment approving and declaring such contract or action to be valid, and shall, upon application of the District, also issue an order permanently enjoining all persons described in the aforesaid notice from thereafter instituting any action or proceeding contesting the validity of such contract or action, and shall fix the time within which the petition for rehearing may be filed. The decision of the court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the District, its officers and agents, and thereafter the bonds so approved and the revenues pledged to their payment shall be incontestable in any court in the State of Oklahoma, and any declaratory judgment on any contract or action of the District entered pursuant to this section shall have the force and effect of a final judgment or decree."

Therefore, the validity or invalidity of any part of said act is not here at issue nor do any of the briefs refer thereto. If this court is satisfied "that the proposed contract * * * is in accordance with (the) Act, the court shall enter a judgment approving and declaring such contract * * to be valid." The sole question, then, for determination is whether or not said contract is in accordance with 82 O.S.1951, sec. 862(b) as amended by section 1 of said Senate Bill, supra, which provides as follows:

"To develop and generate water power, electric power and electric energy within the boundaries of the District; and to buy, sell, resell, interchange and distribute electric power and energy in order to carry forward the business and functions of the District now or hereafter authorized by law and may enter into contracts for such purposes, such contracts to run for a period of not to exceed fifty (50) years, and may contain such reasonable provisions, limitations, qualifications, protective clauses and rights and obligations of purchase and sale, and such provisions for the dedication of the use of facilities and the construction of additional facilities to serve the load requirements of all the parties as may be deemed advisable by the District to safeguard the business and properties of all the parties to such contracts, all within the limits of sound business judgment and practice, good conscience, and not contrary to the public policy of the State;"

The last above quoted provision was enacted for the purpose of authorizing just such a contract as is here involved. This court cannot, regardless of its convictions, substitute its judgment for that of the legislature, regarding public policy. We are bound by the limitations as outlined in the case of Palmer Oil Corp. v. Phillips Petroleum Co., 204 Okl. 543, 231 P.2d 997, 999. It was therein held that,

"The Legislature is itself the judge of the conditions which warrant legislative enactments, and they are only to be set aside when they involve such palpable abuse of power and lack of reasonableness to accomplish a lawful

end that they may be said to be arbitrary, capricious, and unreasonable, and hence irreconcilable with the conception of due process of law. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are ordinarily matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance."

In the instant case, the Legislature has outlined the policy of the state and has delegated the authority to contract to the applicant herein. After many months of investigation while aided by engineering and financial experts and, after many years of experience in the electrical production field, said Grand River Dam Authority has exercised the power delegated to it by executing the contract here presented. The responsibility therefor rests with the legislative branch of the government. The expediency and wisdom of such a contract and its results are matters for its determination and this court is not authorized and cannot be authorized to interfere with the decision made unless the same is illegal. Dorris v. Hawk, Okl., 292 P.2d 417. Indeed, this court, by legislative direction, may here inquire only into the question of whether or not the state agency, the applicant herein acted within its delegated legislative authority. Senate Bill 268, supra. This, we find, it has done.

Any argument that the proposed contract is in violation of other statutes is beside the point because said Senate Bill 268 contains a general repealer provision. Therefore, it superseded all former acts or parts of acts in conflict therewith. That, then, brings us to a consideration of whether or not the Senate Bill and the contract are in violation of the constitutional provisions against monopolies and restraints of trade. Art. II, sec. 32; art. V, secs. 44 and 51.

The question has been exhaustively briefed by the parties and this court has thoroughly considered the many authorities cited and discussed. The complexity of the situation is evidenced by the fact that the parties appearing or filing briefs represent groups whose interests are varied and in many instances conflicting. Some are interested in the resort facilities and businesses and are benefited by an assured high level of the lake waters. Some are interested in bottom land farms below the dam who are benefited by a low level of the lake waters making the larger reserve capacity of the basin a protection against floods. Some are interested in the construction of additional reservoirs because of the resultant boom to business generally. Some are interested in the purchase and resale of electrical energy, benefited by the availability of a cheap supply. Some are interested as consumers of electricity dependent upon a secure and unfailing source of supply. Some are interested in the economy of operation of the entire project. Some are interested in the magnitude of development and use of natural resources. Such personal interests motivate each in support of, or in opposition to, the approval of the contract. Some of the positions taken are more strongly and strenuously defended by reason of the serious water shortage situations obtaining during recent years.

All of the facts and arguments, pro and con were presented to, and were taken cognizance of, by the applicant here, before the execution of the contract. A melding of all of the intricate details and facets of the contract results in an overall interpretation that it provides that the company purchase from the authority its surplus production of electrical energy and sell to the authority all electrical energy needed when the authority's production falls short of its requirements. Production of such energy by the authority is regulated by a formula tying production to the relative water level of the lake reservoir. Service to consumers and price of the commodity are somewhat regulated in such a manner that neither of the parties can use the contractual relation-

ship to take unfair advantage of the other. There results therefrom some restraint of trade and some fixing of prices. Such results, however, are incidental and indirect and do not come within the statutory and constitutional inhibitations as we pointed out in the early case of Ripy & Son v. Art Wall Paper Mills, 41 Okl. 20, 136 P. 1080, 51 L.R.A.,N.S., 33.

■ With little tangible results, we could embark on an extensive discussion of the many reported cases and the fine distinctions made in the various factual situations. Most of the citations thereto are found in the cases of Ripy & Son v. Art Wall Paper Mills, supra; United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416; Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112; Gibbs v. Baltimore Gas Co., 130 U.S. 396, 9 S.Ct. 553, 32 L.Ed. 979, and U. S. v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 and in the annotations and notes in 36 Am.Jur. 521 et seq; 58 A.L.R. 804 et seq. and 45 A.L.R.2d 77 et seq. Such a discussion and analyzation would culminate in the rule expressed by Mr. Justice Brandeis in the case of Board of Trade of City of Chicago v. U. S., 246 U.S. 231, 38 S.Ct. 242, 244, 62 L.Ed. 683 as follows:

"The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its conditions before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences."

The wisdom or advisibility of making such a contract has had no part in our consideration of its legality. Our lack of business experience and capacity in the field of large hydro-electric installations precludes an expression of our opinion. The decision has been made by the Legislature and its duly authorized representative to whom the power was delegated. The record here discloses that they were thoroughly informed and capably advised and we are satisfied that the proposed contract is in accordance with the provisions of Senate Bill 268, supra.

Therefore, as provided by said act, the court declares the contract above described to be valid.

WELCH, C. J., CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS and CARLILE, JJ., concur.

BLACKBIRD and JACKSON, JJ., concur in result.