# Couch *v.* Hutchinson, *et al.*

## *Assumpsit.*

(Decided Dec. 19, 1911. 57 South. 75.)

1. *Contracts; Invalidity; Public Policy.*—The public policy that will render a contract void is that evidenced by the Constitution, the statutes, or definite principles of customary law developed in the course of judicial decision, and the courts will not declare contracts void on such ground except in a clear case.

2. *Same; Burden of Proof.*—The burden of establishing the invalidity of the contract because contrary to public policy is upon the party asserting it.

3. *Same; Agency Contract.*—In the absence of any suggestion that the patented article is without merit, a contract for the sale of an agency contract whereby a party acquires, subject to certain conditions, the right to sell patent churns, and the power to sell on commission to others similar privileges and designated classes of agencies under designated letters patent, in territory not previously appropriated, is not invalid as contrary to public policy.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by M. P. Couch against J. D. Hutchinson and others upon a bond executed by the defendants to A. J. Mason of a certain date, and due and payable on the 10th of December, 1908. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

The complaint alleges the facts set out above and also that the note was made payable to Mason, who transferred and indorsed said note to plaintiff, and waived presentment for payment, protest, and notice of nonpayment. It also claims attorney's fees. Plea 3 is as follows: "Defendant says that the only consideration for the execution of note sued on was the execution and delivery to the defendant of a written contract, a copy of which is hereto attached, marked 'Exhibit A,' and prayed to be taken as a part thereof. And defend-

ant says that the execution of said contract was in pursuance of a scheme, and constituted part of a scheme, to defraud the public, in that the natural and inevitable result of said contract was to cause each person who purchased a fourth agency, a half agency, a whole agency, or a patentee agency to sell like agencies to such persons as he might induce to purchase the same, and so on down in an endless chain, whereby in the end the great bulk of the people would be defrauded, and would receive nothing for cash. paid, or the notes executed by them; and said contract was entered into and constituted a part of an illegal and unlawful conspiracy to induce the public to purchase, one after another, in an endless chain, similar contracts which conveyed to the purchasers no substantial or valuable right or property, and to encourage each purchaser to involve another in order to extricate himself."

STREET & ISBELL, for appellant. An entire plea must be proven as alleged, and if a defendant elects to incorporate two defenses in one plea he must prove them both.—*So Ry. Co. v. Burgess,* 143 Ala. 373; *So. Ry. v. Howell,* 135 Ala. 639; *Moerlein J. Co. v. Crews,* 55 So. 144. Presumptively, a patent and the right to vend it, are both useful and valuable, and no effort was made here to show to the contrary.—30 Cyc. 815, 828, and 1040; 22 A. & E. Enc. of Law, 272, 273, and 335. The negative form of the averment does not relieve the defendants of the burden of proving it, as it is in the nature of an impeachment of the consideration.—*Freeman v. Blount,* 55 So. 295; 16 Cyc. 927, 936; Sec. 3966, Code 1907. The court erred in declaring the contract void as against public policy.—*Equitable L. Co. v. Warren,* 97 Am. St. Rep. 177; *Richmond v. R. R. Co.,* 26 Ia. 202. The court erred in giving charge G, requested by the

[Couch v. Hutchinson, et al.]

defendant.—*Nelms v. Mfg. Co.,* 92 Ala. 162; *Rasberry v. Pulliam,* 78 Ala. 191. Purchase of negotiable paper for a valuable consideration, and without notice must be implied.—*Slaughter v. Bank,* 109 Ala. 157.

GOODHUE, BRINDLEY & WHITE, for appellee. The only contention arises over the construction of the contract and we insist that the contract was a mere speculative or wagering one and void between the parties.— *Schmuckle v. Waters,* 25 N. E. 284, and cases there cited. The contract was a cunningly devised plan to cheat and defraud.—*Merrill v. Packer,* 45 N. W. 1006; *McNamara v. Gargett,* 13 Am. St. Rep. 355; 9 Cyc. 469; 15 A. & E. Enc. of Law, 944; *Davis v. Seelye,* 38 N. W. 901.

WALKER, P. J.—To the complaint in this case counting on a bond or promissory note executed by the defendants (the appellees here) a special plea, numbered 3, was filed, which set up that the only consideration for the note sued on was the execution and delivery of a written contract purporting to confer on them certain patent rights, a copy of which was made an exhibit to the plea, which questioned the validity of that consideration on a ground stated. As the plea does not aver the existence of any fact collateral to the execution of the contract mentioned which was claimed to affect its validity, and does not aver as a fact that there was an absence of value in the consideration referred to, it is understood that the expressed conclusions of the pleader, that "the execution of that contract was in pursuance of a scheme and constituted a part of a scheme to defraud the public," and "constituted a part of an unlawful conspiracy to induce the public to purchase, one after another, in an endless chain, similar

[Couch v. Hutchinson, et al.]

contracts which conveyed to the purchasers no substantial or valuable right or property, and to encourage each purchaser to involve another in order to extricate himself," have for their only support the deduction of the pleader from the terms of the contract itself "that the natural and inevitable result of said contract was to cause each person who purchased a fourth agency, a half agency, a whole agency, or a patentee agency to sell like agencies to such persons as he might induce to purchase the same, and so on down in an endless chain, whereby in the end the great bulk of the people would be defrauded and would receive nothing for cash paid or the notes executed by them." In other words, that plea attacked the patent right contract which constituted the consideration of the instrument sued on on the ground that on its face it is legally invalid; and the action of the trial court in overruling the demurrer interposed to that plea is sought to be sustained here on the ground that the contract is void as being against public policy and directly tending to defraud the public generally.

When the validity of a contract is attacked on the ground that it is violative of public policy, or that it is against the public interest to enforce it, the court may well bear in mind that it is wholly outside of its function to be influenced by some considerations of policy which might properly have weight with the Legislature if it had occasion to deal with the question of permitting or prohibiting such a contract, or with a business man who was called on to pass upon the question of the wisdom or folly of entering into such an engagement; that the public policy with which it is concerned is that evidenced by the Constitution, the statutes, or definite principles of customary law which have been recognized and developed by the course of judicial decisions; and

that it may well look with suspicion upon an invitation to pronounce a questioned transaction invalid as being against public policy when there is a failure to make it plain how its recognition or enforcement would contravene any established rule of law. It behooves a court to move with caution when it takes up a line of inquiry by which it may unwittingly be led beyond the domain of established law within which judicial investigations should be confined, and find itself dealing with questions of policy which the law has not seen fit to make the subjects of inquiry by the courts. A plain-speaking English judge went so far as to say: "I for one protest, as my lord has done, against arguing too strongly on public policy. It is a very unruly horse, and when once you get astride of it, you never know where it will carry you. It may lead you from sound law. It is never argued at all but when other points fail."—Sir James Burrough in *Richardson v. Mellish,* 2 Bing. 229. Without adopting that expression as a statement of the law on the subject, it is safe to say that courts should regard themselves bound by rules of extreme caution when invoked to declare a transaction void on grounds of public policy, and that contracts should not be declared void on such grounds except in cases free from doubt. —*Smith v. Du Bose,* 78 Ga. 413, 3 S. E. 309, 6 Am. St. Rep. 360; *Barrett v. Carden,* 65 Vt. 431, 26 Atl. 530, 36 Am. St. Rep. 876; *Smith v. San Francisco, etc., R. Co.,* 115 Cal. 584, 47 Pac. 582, 35 L. R. A. 309, 56 Am. St. Rep. 119; *Equitable Loan, etc., Co. v. Waring,* 117 Ga. 599, 44 S. E. 320, 62 L. R. A. 93, 97 Am. St. Rep. 177; 6 Words & Phrases, 5813; 1 Page on Contracts, § 326. And in dealing with the question of public policy as affecting the validity of a contract it is well to recall what was said by an eminent judge: "If there is one thing which more than another public policy requires

it is that men of full age and competent undestanding
shall have the utmost liberty of contracting, and that
their contracts, when entered into freely and volunta-
rily, shall be held sacred, and shall be enforced by courts
of justice."—Sir George Jessel in *Printing, etc., Co. v.
Sampson,* L. R. 19 Eq. 465.

It is also to be remembered, in entering upon such
an inquiry, that the burden is on the party who seeks
to put a restraint upon the freedom of contracts to
make it plainly and obviously clear that the contract
is against public policy.—*Hartford Fire Ins. Co. v.
Chicago, Milwaukee & St. Paul R. Co.,* 70 Fed. 201, 17
C. C. A. 62, 30 L. R. A. 193.

We are of opinion that this burden has not been sus-
tained by the party making the attack upon the con-
tract brought into question in this case. The authori-
ties principally, if not solely, relied on by the counsel
for the appellees to sustain the ruling on the demurrer
to the plea above mentioned are the decisions of the
courts of several states in reference to the notorious
"Bohemian Oats" contracts, which were the means
adopted for carrying out a swindling scheme which for
a while seems to have had quite a successful career.
The state of facts presented in one of the cases cited
by the counsel—*Schmueckle v. Waters,* 125 Ind. 265,
25 N. E. 281—is typical of a group of cases which found
their way into the courts as the result of the operations
of that scheme. The transaction in which the note sued
on in that case was given was simply this: Ten bushels
of oats of the actual value of 30 to 40 cents a bushel
were delivered by one party to the other upon an agree-
ment that the party receiving the oats should execute
his note for $100, the party furnishing the oats agree-
ing in turn to sell, before the maturity of the note,
twenty bushels of the same kind of oats to be delivered

by the maker of the note at the price of $10 per bushel, both parties having knowledge of the actual value of the oats. The court held that the contract was a mere speculative or wagering contract, and it seems that it was on that ground that a right to recover on the note was denied, though the court also characterized the transaction as prejudicial to public welfare and against public policy. In another case cited by the counsel for the appellees which presented a similar state of facts —*Merrill v. Packer*, 80 Iowa, 542, 45 N. W.·1076—the Iowa court held that the contract was not a gambling transaction, but that the note could not be recovered on because the scheme of which it was a part was one to cheat and defraud. In 1 Page on Contracts, § 402, is found a collection of cases which grew out of the operations of that scheme. In reference to these cases it is there said: " 'Bohemian Oats' contracts were agreements whereby A. sold B. oats at an inflated price, took B.'s note therefor, and gave B. a bond to sell for him during the following year twice as many bushels of such oats as B. had purchased, at the same price. In some jurisdictions these contracts were held wagers; in others, not. Some courts hold that such contracts are illegal, as they cannot be performed without defrauding a third party." It is on this last-mentioned ground that the transaction disclosed in this case is claimed to be illegal and unenforceable, and some of the "Bohemian Oats" cases are referred to as rulings on analogous states of fact.

An analysis of the contract a copy of which is made an exhibit to the plea above referred to does not verify the conclusions in reference to its nature and necessary operation which are expressed by the pleader. That was a patent right contract by which the appellees acquired, subject to conditions stated, the privilege of

selling certain patent churns, made under designated letters patent of the United States, and also a power of attorney to sell on commission to others similar privileges, and also other designated classes of agencies under the patent. By provisions in the contract the rights to vend the patented article and to grant territorial rights under the patent were restricted to counties not already appropriated, in a manner provided for, by another person holding a similar contract. The contract was termed a "one-fourth agency contract," and was filled out on a form supplied by the patentee or his selling agent. The scope of the other classes of agencies authorized to be disposed of is not disclosed by the provisions of this contract, but reference is made to printed matter to be furnished by the patentee for use in making the authorized sales. The plea does not hint at the existence of any defect in the patent, or suggest that the patented article was without merit or even that it was worth less than the price at which the contract authorized its sale, and no provision of the contract is pointed out which could be construed to be an invitation or inducement to do anything prohibited by law. The sum and substance of the matter is that the plea shows that the consideration of the note sued on was a contract by which the maker of the note acquired the right to vend a patented article and to make disposition of territorial rights under a patent "for improvements in churns." The contract does not even obligate him to do either the one or the other. It does not show on its face that it is a part of a scheme to defraud the public or any part of it or to do anything else in contravention of an established rule of law. To declare that contract invalid on the ground suggested it would be necessary to find some rule of law against stimulating or encouraging the selling of patent churns or of rights

[Kendrick & McGough v. Chafin.]

under a patent on that subject. In view of the age of the industry, of the methods sometimes employed by its promoters, and of the zeal with which many of the controversies that have marked its history have been waged, it may be supposed that if there was such a rule of law it would have been brought to light in some former patent churn lawsuit; and that it would not be necessary to refer the court to the "Bohemian Oats" cases for evidence of its existence.

Enough has been said to indicate the grounds of the court's conclusion that the demurrer to plea 3 should have been sustained.

Reversed and remanded.