ALICE WOLKOVISKY *vs.* SAMUEL RAPAPORT.

Hampden. September 23, 1913. — October 22, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Equity Jurisdiction,* To enforce trust. *Trust,* Validity. *Husband and Wife. Marriage and Divorce.*

A wife, who voluntarily has discontinued a libel for divorce, cannot maintain a suit in equity to compel the enforcement for her benefit of a trust created by her husband by a deposit of money to be paid to her on her obtaining a divorce from him; because, if the transaction can be regarded as a valid provision for alimony upon the plaintiff obtaining a divorce to which she is entitled, the condition of payment has not been performed, and, if the transaction is an attempt by the husband and wife to dissolve their marital relation by means of a collusive divorce, it is void as against public policy, and no right can arise from it that the courts will enforce.

DE COURCY, J. This bill in equity was brought to recover possession of two bank books, the plaintiff alleging that she entrusted them to the defendant to hold for her, and that he refuses to surrender them on her demand. The evidence is not reported, but the trial judge * made certain findings of fact, upon which he

---

* *Morton,* J., in the Superior Court.

ruled that the plaintiff was not entitled to recover; and a decree was entered dismissing the bill, from which the plaintiff appealed.

The findings of fact are as follows: "The amount of these deposits represented by the bank books was received in the form of notes from her husband, through his brother. The amount was deposited in the banks referred to in the name of the plaintiff, but she understood and accepted the amounts upon the condition and understanding that it should be put into the hands of the defendant, a Jewish rabbi, to hold under the terms of the trust agreement forming a part of the defendant's answer. She turned the books over to the defendant to carry out this understanding and to be held in accordance with the terms of the said trust.

"I further find that a decree for separate support has been granted by the Probate Court, and that divorce proceedings were commenced against her husband, but were not pressed because of the necessity of using her minor children as witnesses, which she was unwilling to do, and that the bill [libel] was dismissed without prejudice.

"I further find that up to about the middle of November the plaintiff was paid by her husband $12 a week, but that since that time only about $6 a week has been paid for part of the time, which she refused."

The trust agreement above referred to was as follows:

"I, Mordchy Wolkovisky, have this 27th day of May, 1912, deposited with Rabbi Samuel Rapaport (as trustee), $800.00 in cash and $1200.00 in notes, same to be paid in monthly payments, the sum of $200.00 each month.

"The above mentioned sum of money is left for the following purpose: That Alice Wolkovisky, wife of the said Mordchy Wolkovisky, is to receive the full amount of $2000.00 only, after she has secured a Court divorce from the said husband, Mordchy. Then the trustee, Samuel Rapaport, must pay the full amount of $2000.00 to Alice Wolkovisky, without any claims from either party.

"Now, then, until the divorce is secured the said husband is to pay to his wife Alice and the two children $12.00 per week support. The said wife is also to receive $200.00 in cash besides, as agreed.

"After the divorce the said Alice Wolkovisky is to receive $6.00

per week, providing she keeps the two children. However, if Alice Wolkovisky desires to marry, after the divorce: they agreed upon *the* [*sic*] thus: That the wife, Alice, keep the boy, and said Mordchy keep the girl.

"Notice is hereby given, that on the above mentioned statement, both parties, Mordchy Wolkovisky and his wife Alice, have decidedly agreed upon with their own free will to which both sign their signatures of agreement.

"Duplicate                                   Alice Wolkovisky.
Signatures.                                  Mordchy Wolkovisky."

It does not appear whether the trial judge on the evidence before him regarded the trust agreement merely as an attempt in good faith to provide for alimony, in connection with a divorce to which the plaintiff was legally entitled (see *Ham* v. *Twombly*, 181 Mass. 170), or whether he was satisfied that it was made in pursuance of a collusive compact between the husband and wife for procuring a divorce, under which she was to bring a libel and he was to remunerate her therefor and to make no contest in court. In either event, on the facts stated in the memorandum, the bill was rightly dismissed. Assuming that the trust agreement may be interpreted as a legal one, the plaintiff, by its terms, would not be entitled to the bank books or the money until the divorce should be secured by her; and this she rendered impossible by her own act in voluntarily discontinuing the libel. Further the money represented by the bank books in the hands of the defendant trustee was furnished not by the plaintiff but by her husband.

It seems apparent, however, and the judge may have concluded, that the purpose of the agreement was virtually to dissolve of their own mere will the marital relation existing between the plaintiff and her husband, and to compel the court to act upon a partial disclosure of the real facts in the case by withholding a defense which might prevent a divorce. Marriage is more than a mere civil contract. The law properly regards it as the basis of the social organization, and its far reaching influences affect not only the welfare of the members of the family but the good order of society. When the marital relation has been assumed it cannot be rescinded or dissolved by the parties of their own accord.

It is indissoluble except by the judgment of an appropriate tribunal, for some specified cause prescribed by law and after careful scrutiny of the evidence submitted by the parties or obtained from an investigation directed by the court.   A contract such as that disclosed in the case at bar would open the door for the procuring of divorces by collusion, and would work a fraud on courts of justice.   From the multitude of cases deciding that such agreements are void as against public policy it is sufficient to cite the following: *Hardy* v. *Smith,* 136 Mass. 328; *Hope* v. *Hope,* 8 DeG., M. & G. 731; *Beard* v. *Beard,* 65 Cal. 354; *Hamilton* v. *Hamilton,* 89 Ill. 349; *Everhart* v. *Puckett,* 73 Ind. 409; *Johnson* v. *Johnson's Committee,* 122 Ky. 13; *Adams* v. *Adams,* 25 Minn. 72; *Wilde* v. *Wilde,* 37 Neb. 891; *Weeks* v. *Hill,* 38 N. H. 199; *Phillips* v. *Thorp,* 10 Ore. 494; *Kilborn* v. *Field,* 78 Penn. St. 194; 11 Ann. Cas. note 377.   The aid of a court of law or of equity cannot be invoked to enforce a claim the very statement of which discloses an illegal purpose as its foundation.   The law leaves the parties to unlawful contracts where they have placed themselves. *Snell* v. *Dwight,* 120 Mass. 9.   *Downey* v. *Charles S. Gove Co.* 201 Mass. 251.

<em>Decree dismissing the bill affirmed.</em>

The case was submitted on briefs.

*N. P. Avery,* for the plaintiff.

*N. M. Harvey,* for the defendant.