# CRONAN v. CRONAN.

HUSBAND AND WIFE; ILLEGAL CONTRACTS; PLEADING; EVIDENCE; BURDEN OF PROOF.

1. A written contract between parties who at the time of its execution were husband and wife, whereby the husband in consideration of being relieved of all obligations to the plaintiff and of all her claims against his estate agrees to pay and secure to her during her life a specified sum per month and to assume and pay an existing mortgage encumbrance on real estate owned by her, is illegal and void, if it is shown by parol that the husband was induced to execute it by a promise on the wife's part to procure a divorce from him, especially if the written contract is made in a State where contracts having for their object the dissolution of the marriage contract are not countenanced; and in an action by the wife for breach of such a written contract the husband may show that he was so induced to execute it. (Mr. Justice ROBB dissenting in the opinion delivered on a rehearing.)

2. In an action of covenant the admission by the defendant of the execution by him of the contract sued upon constitutes a waiver by him of his plea of *non est factum*.

3. While if there are several issues in an action the ultimate burden of proof is upon the plaintiff to establish his case (citing *Sullivan* v. *Capital Traction Co.* 34 App. D. C. 358), where, in an action of covenant on a written contract between the plaintiff and the defendant, who at the time were husband and wife, whereby the defendant agreed to pay an existing mortgage encumbrance on real estate owned by the plaintiff, the defendant pleads the illegality of the contract because of his having been induced to execute it by a promise by the plaintiff to procure a divorce if he would do so, the burden of proof is upon the defendant to establish the issue so made, and an instruction granted on behalf of the defendant, stating that the burden is on the plaintiff, is erroneous.

No. 2972. Submitted January 4, 1917. Decided February 5, 1917. Judgment of February 5, 1917, set aside and cause restored to calendar for reargument February 14, 1917. Reargued March 6, 1917. Decided on reargument April 23, 1917.

Note.—As to validity of contract upon condition, or in consideration, of procuring divorce, see note in 44 L.R.A.(N.S.) 379.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action of covenant.                                        *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment for the defendant, appellee here, in the supreme court of the District in an action for breach of covenant.

The parties, William P. and Mary Cronan, while husband and wife and living separate and apart, entered into a written contract by the terms of which, in consideration of being relieved of all obligations to the plaintiff and of all her claims against his estate, the defendant agreed to pay and secure to her during her life the sum of $150 per month and to assume and pay a certain note for $7,000 secured by mortgage upon real estate belonging to her. The action was brought for breach of covenant to pay the note for $7,000. Accompanying the declaration was an affidavit under the 73d rule and a copy of the contract sued upon.

The defendant interposed four pleas: First, *non est factum;* second, that the consideration for the contract is not good and valuable, but illegal and void; third, that the contract is void because made by the defendant in consideration of the plaintiff agreeing to institute a suit for divorce, the prosecution of which the defendant agreed to facilitate by making no substantial defense thereto, and that the terms of said illegal agreement were carried out; that the contract is void because when made the parties were married and a suit for divorce pending, which suit it had been agreed plaintiff was to prosecute and defendant was not to defend, all the terms and provision of said contract being substituted for alimony which might be awarded the plaintiff, with the understanding that the contract would be secretly and unlawfully withheld from the court. Plaintiff joined issue upon all of the pleas. Trial was had before a jury, which resulted in a verdict and judgment for the defendant.

The signing of the contract and the breach alleged in the

declaration were admitted at the trial. It was further admitted that the defendant continued to pay the $150 per month until shortly before the suit was instituted. The evidence for the defendant then was introduced.

The defendant is a lieutenant commander in the United States Navy, was born in 1879, and graduated from the Naval Academy in 1898. He married the plaintiff in New York on June 20, 1907, while he was stationed at that place. He soon was ordered to sea and made a trip around the world, his wife, of course, remaining behind, where she was indifferently provided for by him. In April, 1908, he wrote her from California, in part as follows: "I am forced to tell you the truth. It is better that you forget me absolutely. I am sorry that I can send you no money, but I have none and am in debt myself. Upon arrival in San Francisco I shall take steps to secure a divorce for us, for the present state of affairs holds no happiness for either of us and would eventually mean disaster." He saw an attorney in San Francisco, who, however, informed him that he had no grounds for a divorce, but that his wife might have. This attorney, who also maintained an office in New York, subsequently saw the plaintiff in the interests of the defendant, but she was unwilling to institute a divorce. Later, in May or June of 1909, the defendant, according to his own testimony, interviewed the plaintiff, who "chided him for having written the letter which he did write from California and implored him to resume their former relations, and was most affectionate in her manner. * * * She said she did love him and she would not give him up, and that she would not get a divorce." He further stated that he told her his father was worth over half a million dollars and was dying; that he was one of four heirs; that he would be in a position to make a liberal settlement upon her; that "after witness told her of his father's wealth and that he was about to die, her manner changed completely, and from imploring and entreating witness to stay with her she became very angry and indignant and said she was through with him, that that was no way to be treated, that she would get a divorce, and witness could go as far as he liked."

The evidence for the defendant further tended to show that the plaintiff, at the defendant's suggestion, subsequently went to California, and, on January 14, 1910, filed a complaint for divorce on the ground of desertion; that the defendant went to San Francisco for the sole purpose of having service made upon him; that he paid plaintiff's expenses from New York to San Francisco, her expenses while there, and all costs and expenses involved in the suit, including attorneys' fees. In other words, defendant's evidence tended to prove that his endeavors to have his wife proceed against him for divorce finally were successful, and that the contract in suit was entered into upon that understanding and condition.

The plaintiff's evidence tended to show that, owing to the defendant's conduct, she finally determined to obtain a divorce. She testified that "she understood thoroughly that she could sue him for divorce or desertion or maintenance and get alimony, that she could keep him as her husband or not, as she saw fit, and unless he made a proper settlement she was going to do what she saw fit."

*Mr. Bynum E. Hinton* and *Mr. Joseph W. Cox,* for the appellant, in their brief cited:

*Abraham* v. *King,* 111 Md. 104; *Anderson* v. *Carlson,* 99 Ill. App. 514; *Barnes* v. *Brown,* 32 Mich. 146; *Baum* v. *Baum,* 83 Am. St. Rep. 864; *Beck* v. *Houppert,* 104 Ala. 503; *Besant* v. *Wood,* L. R. 12 Ch. Div. 605; *Bibb* v. *Allen,* 149 U. S. 481; *Bonla* v. *Gridley,* 77 App. Div. 33; *Brown* v. *Brown,* — Cal. —, 147 Pac. 1168; *Bullard* v. *Smith,* 28 Mont. 387; *Cardwell* v. *Kelly,* — Va. —, 40 L.R.A. 240; *Clark* v. *West,* 193 N. Y. 349; *Cole* v. *Hardware Co.* 18 L.R.A.(N.S.) 1161; *Collins* v. *Blanter,* 2 Wilson, 341, 1 Smith L. C. 715; *Columbus* v. *Sheely,* 43 App. D. C. 462; *Couch* v. *Hutchinson,* 57 So. 75; *Daniels* v. *Tearney,* 102 U. S. 415; *Dolliver* v. *Dolliver,* 94 Cal. 642; *Evans* v. *Drava,* 24 Pa. 67; *Ford* v. *Harrington,* 16 N. Y. 285; *Frantz* v. *Harper,* 62 Pac. 603; *Freelove* v. *Cole,* 41 Barb. 318, 41 N. Y. 619; *Galusha* v. *Galusha,* 116 N. Y. 635; *Gipe* v.

*Pittsburg R. Co.* 41 Ind. App. 156; *Goddard* v. *Rawson,* 130 Mass. 97; *Greenleaf* v. *Bateman,* 58 N. Y. Supp. 76; *Hall* v. *Barrett,* 93 Ill. App. 642; *Harper* v. *Harper,* 85 Ky. 160, 7 Am. St. Rep. 583; *Henderson* v. *Henderson,* 37 Or. 141; *Hobbs* v. *Boatwright,* 113 Am. St. Rep. 709; *Hoh* v. *Hoh,* 84 Wis. 378, 54 N. W. 731; *Horn* v. *Gibson,* 103 Pac. 563; *Horton* v. *Rohlff,* 69 Neb. 95; *Irvin* v. *Irvin,* 169 Pa. 529, 29 L.R.A. 292; *Irwin* v. *Williar,* 110 U. S. 499; *Kellogg* v. *Larkin,* 56 Am. Dec. 164; *King* v. *Mollohan,* 61 Kan. 683; *Lalone* v. *United States,* 164 U. S. 255; *Masters* v. *Bienker,* 87 Ky. 1; *Mc-Bratley* v. *Chandler,* 22 Kan. 482; *McConnell* v. *McConnell,* 33 L.R.A.(N.S.) 1074; *McMullin* v. *Hoffman,* 174 U. S. 656; *Miltmore* v. *Miltmore,* 40 Pa. 151; *Mutual Coal Co.* v. *Realty Co.* 130 N. Y. Supp. 169; *Nellis* v. *Clark,* 20 Wend. 24; *Nesmith* v. *Platt,* 137 Iowa, 297; *O'Connor* v. *Ward,* 60 Miss. 1025; *Ogilvie* v. *Ogilvie,* 37 Or. 171; *Page* v. *Met. L. Ins. Co.* 135 S. W. 911; *Parmely* v. *Showdy,* 86 Misc. 634; *Paul* v. *Paul,* 71 Ill. App. 671; *Phillips* v. *Myer,* 82 Ill. 67, 25 Am. Rep. 275; *Phœnix Brewing Co.* v. *Rumbard,* 181 Pa. 251; *Planters Bank* v. *Union Bank,* 16 Wall. 483; *Printing Co.* v. *Samson,* L. R. 19 Eq. 465; *Rideout* v. *Mars,* Ann. Cases, 1913D, 772; *Rippey & Sons* v. *Art Wall Paper Mills,* 41 Okla. 20; *Rothschild* v. *Title Guaranty & T. Co.* 204 N. Y. 458; *Russell* v. *Turner,* 80 S. E. 731; *Sayles* v. *Sayles,* 21 N. H. 312; *St. Louis* v. *Davidson,* 102 Mo. 149; *Shallman* v. *Royal Ins. Co.* 94 Ill. App. 364; *Shaulis* v. *Buxton,* 115 Iowa, 425; *Starke* v. *Littlepage,* 4 Rand. 368; *State* v. *Williams,* 29 Ohio St. 161; *Stebbins* v. *Morris,* 19 Mont. 115; *Thompson* v. *Thompson,* 31 D. C. App. 557, 218 U. S. 611; *United States* v. *Hodson,* 10 Wall. 395; *Virginia F. & M. Ins. Co.* v. *Hogue,* 105 Va. 355; *Vohman* v. *Michel,* 185 N. Y. 420; *Walker* v. *Walker,* 9 Wall. 743; *Wall Paper Co.* v. *Hobbs,* 90 Hun, 298; *Werner* v. *Werner,* 153 App. Div. 719; *Winter* v. *Winter,* 191 N. Y. 462.

*Mr. Arthur Peter* and *Mr. John M. Russell,* for the appellee, in their brief cited:

*Adams* v. *Adams,* 25 Minn. 72; 15 Am. & Eng. Enc. Law, 95,

956, 957; *Beard* v. *Beard,* 65 Cal. 354; *Belz* v. *Belz,* 33 Ill. App. 107; *Birch* v. *Anthony,* 109 Ga. 349; 1 Bishop, Mar. Div. & Sep. Sec. 76; 2 Bishop, Mar. Div. & Sep. Secs. 251, 252, 258; *Re Bunch,* 180 Fed. 519; *Cardwell* v. *Kelley* (Va.) 40 L.R.A. 240; 5 Chamberlayne, Evi. Sec. 3557; *Collins* v. *Blantern,* 2 Wils. 341; *Columbus* v. *Sheehy,* 43 App. D. C. 466; *Copeland* v. *Boston Dairy Farm,* 184 Mass. 209; *Coppel* v. *Hall,* 7 Wall. 542–558; *Costill* v. *Costill,* 47 N. J. Eq. 349; *Daniels* v. *Tierney,* 102 U. S. 415; 2 Elliott Contr. Secs. 257, 666, 1115; 2 Evans' Harris, p. 53; *Ginn* v. *Dolan,* 81 Ohio, 121; Greenhood, Pub. Pol. Sec. 490; *Hamilton* v. *Hamilton,* 89 Ill. 349; *Howard* v. *Brilton,* 9 S. W. 73; *Hudson* v. *Moon,* 130 Pac. 774; *Huntington* v. *Shule,* 180 Mass. 371; *Irwin* v. *Irwin,* 169 Pa. 529; *Jaquette* v. *Capital Trac. Co.* 34 App. D. C. 44; Keigwin, Pl. 30; *Kendall* v. *Brownson,* 47 N. H. 186; *King* v. *Doane,* 139 U. S. 173; *King* v. *Mollohan,* 61 Kan. 683; *Lake* v. *Lake,* 136 App. Div. 47; *Leach* v. *Burr,* 188 U. S. 516; *Libby* v. *Downey,* 5 Allen, 300; *Lovern* v. *Lovern,* 106 Cal. 509; *McMullen* v. *Hoffman,* 174 U. S. 639; *Manufacturers* v. *M. I. Bureau,* 152 Wis. 78; *Martin* v. *Clark,* 8 R. I. 389; *Moore* v. *Brewer,* 94 Ga. 260; *Morville* v. *American Tract Soc.* 123 Mass. 138; *Muckenburg* v. *Haller,* 29 Ind. 139; *Newman* v. *Frietas,* 129 Cal. 289; *Palmer* v. *Palmer,* 26 Utah, 33; *Pereira* v. *Pereira,* 156 Cal. 5; *Perley* v. *Perley,* 144 Mass. 104; *Pettit* v. *Pettit,* 107 N. Y. 677; *Planters' Bank* v. *Union Bank,* 16 Wall. 483; 1 Poe, Pl. p. 876; *Pratt* v. *Sharp,* 79 N. Y. 437; *Roe* v. *Kiser,* 62 Ark. 92; 6 R. C. L. pp. 772, 818, 819, 821; *Sayles* v. *Sayles,* 21 N. H. 312; *Schmeiding* v. *Doellner,* 10 Mo. App. 373; *Senter* v. *Senter,* 70 Cal. 626; *Simms* v. *Ray,* 42 App. D. C. 499; *Smith* v. *Sac County,* 11 Wall. 146; *Speck* v. *Dausman,* 7 Mo. App. 165; *Sullivan* v. *Capital Trac. Co.* 34 App. D. C. 366; *Texas* v. *Reed,* 32 S. W. 118; *Thompson* v. *Thompson,* 70 Mich. 62; *Union Bank* v. *Ridgley,* 1 H. & G. 416; *United States* v. *Hodson,* 10 Wall. 395; Wald's Pollock, Contr. Secs. 376, 483; *Weaver* v. *B. & O. R. Co.* 3 App. D. C. 436; *Werner* v. *Werner,* 153 App. Div. 729; 2 Whart. Conf. Laws, 888; *White* v. *Franklin Bank,* 22 Pick. 181; 4 Wigmore, Ev. Secs. 2489–

2494; *Wilhite* v. *Roberts,* 4 Dana, 172; *Winter* v. *Winter,* 191 N. Y. 467.

Mr. Justice ROBB delivered the opinion of the Court:

The first assignment of error relates to the refusal of the court to direct a verdict for the plaintiff. Marriage has been said to be the most important relation in life, and that it has more to do with the morals and civilization of the people than any other institution. "The consent of the parties is of course essential to its existence, but when the contract to marry is executed by the marriage, a relation between the parties is created which they cannot change. Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress." *Maynard* v. *Hill,* 125 U. S. 190, 211, 31 L. ed. 654, 659, 8 Sup. Ct. Rep. 723. Again, in *Andrews* v. *Andrews,* 188 U. S. 14, 30. 47 L. ed. 366, 368, 23 Sup. Ct. Rep. 237, the court referred to marriage as "interwoven with the very fabric of society." It has come to pass, therefore, that courts frown upon all agreements between husband and wife having for their object the procurement of a divorce. Good faith is demanded of the parties to a divorce proceeding, to the end that the court may be fully advised as to the facts. And any agreement between such parties made with an intent to promote or facilitate the procurement of a divorce tends to close avenues of information and mislead the court. *Sheehan* v. *Sheehan,* 77 N. J. Eq. 411, 140 Am. St. Rep. 566, 77 Atl. 1063; *Pereira* v. *Pereira,* 156 Cal. 1, 23 L.R.A.(N.S.) 880, 134 Am. St. Rep. 107, 103 Pac. 488; *Birch* v. *Anthony,* 109 Ga. 349, 77 Am. St. Rep. 379, 34 S. E. 561; *Stokes* v. *Anderson,* 118 Ind. 533, 4 L.R.A. 313, 21 N. E. 331; *Wolkovisky* v. *Rapaport,* 216 Mass. 48, 102 N. E. 910, Ann. Cas. 1915A, 809; *Pierce* v. *Cobb,* 161 N. C. 300, 44 L.R.A.(N.S.) 379, 77 S. E. 350, 9 R. C. L. 254.

However, it is no longer open to question that where a separation actually has occurred, or is to occur immediately, a deed of separation between the parties will be upheld; and "this is especially true if the separation was occasioned by the misconduct of the husband, and the provision for the wife's support was reasonable under the circumstances, and no more than a court before which she was entitled to carry her grievances would have decreed to her as alimony." *Walker* v. *Walker* (*Walker* v. *Beal*) 9 Wall. 743, 751, 19 L. ed. 814, 818; *Winter* v. *Winter,* 191 N. Y. 462, 16 L.R.A.(N.S.) 710, 84 N. E. 382. And such a deed of separation is no bar to the bona fide application by either party for divorce. *J. G.* v. *H. G.* 33 Md. 401, 3 Am. Rep. 183; *Clark* v. *Fosdick,* 118 N. Y. 7, 6 L.R.A. 132, 16 Am. St. Rep. 733, 22 N. E. 1111, 23 N. E. 136; *Archbell* v. *Archbell,* 158 N. C. 408, 74 S. E. 327, Ann. Cas. 1913D, 261.

But in the present case, there is evidence tending to show that the execution of this contract by the defendant may have been induced by a promise on the part of the plaintiff that she would procure a divorce from him; in other words, that this contract, although valid on its face, disclosed only a part of the agreement, and that the real agreement contemplated a severance of the marriage ties in such a way that the court would be led to believe that the parties really were adversary and that all the facts were before the court, when in truth there was no real defendant, the interest of each party being to make a case warranting a decree. If such an agreement existed, it was collusive, and amounted to a fraud upon the court.

It is insisted, however, that in the circumstances of this case the defendant ought not to be permitted to plead his own turpitude. It is pointed out that the divorce was granted, is still in force, that the defendant has married on the strength of it, and now is seeking to avoid obligations which the law would have imposed upon him. But the difficulty is, irrespective of our opinion of his conduct, we must look beyond the parties, and if satisfied that the public interest will best be subserved by a refusal to aid in the enforcement of this contract, we must take notice of the facts, from whatever source they come. That

the public interest is involved already has been made to appear. "The court refuses to enforce such a contract, and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions." *McMullen* v. *Hoffman,* 174 U. S. 639, 669, 43 L. ed. 1117, 1128, 19 Sup. Ct. Rep. 839. The evidence being conflicting upon this branch of the case, there was a question for the jury.

The plaintiff requested the court to charge the jury that the "burden of proof rested upon the defendant to establish by a preponderance of evidence that the plaintiff promised in consideration of his making the agreement that she would procure a decree of divorce." This request was denied, and over the objection and exception of the plaintiff the court instructed the jury, as requested by the defendant, "that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that there was no understanding between the plaintiff and defendant that plaintiff would procure the divorce from the defendant in consideration of the defendant's entering into the agreement in suit." The action of the court in refusing the instruction requested by the plaintiff and in granting that submitted by the defendant is assigned as error.

The admission of the execution of the contract by defendant amounted to a waiver of the plea of *non est factum.* See 1 Chitty, Pl. 16th Am. ed. 629; 2 Chitty, Pl. 401; *State use of Herdman* v. *Houston,* 1 Harr. (Del.) 230; *Union Bank* v. *Ridgley,* 1 Harr. & G. 324. There remained, therefore, the pleas setting up the special matter of defense. The contract being complete in itself and expressing a valuable consideration (*Walker* v. *Walker* (*Walker* v. *Beal*) 9 Wall. 743, 19 L. ed. 814; *Winter* v. *Winter,* 191 N. Y. 462, 16 L.R.A.(N.S.) 710, 84 N. E. 382), proof of it and the breach assigned made a case for the plaintiff. The defendant, however, by his pleas alleged facts tending to avoid the contract, and he introduced evidence

tending to support those averments. In other words, he in effect admitted that the contract on its face was valid, but that an additional undisclosed consideration rendered the contract illegal, and hence relieved him from all obligation thereunder. There was no issue as to the contract as written and proved: Had there been, the burden would have been on the plaintiff. *Tinker* v. *Midland Valley Mercantile Co.* 231 U. S. 681, 683, 58 L. ed. 434, 435, 34 Sup. Ct. Rep. 252. Under the facts stated, the issue was narrowed to the question whether there was an understanding between plaintiff and defendant that the plaintiff would procure a divorce from the defendant in consideration of the defendant's entering into the agreement. The defendant having tendered this issue, the burden was upon him to establish it. Thus, in *McMullen* v. *Hoffman,* 174 U. S. 657, 43 L. ed. 1124, 19 Sup. Ct. Rep. 839, the court says that the "burden of proof is on the obligor to show the real consideration;" and again, on page 658, after a review of the authorities, the court says: "These authorities uphold the principle that the whole case may be shown, and the plaintiff cannot prevent it by proving only so much as might sustain his cause of action, and then objecting that the defendant himself brings in the balance, which it was not necessary for plaintiff to prove." As further authority for the proposition, see also *Ripy* v. *Art Wall Paper Mills,* 41 Okla. 20, 51 L.R.A.(N.S.) 33, 136 Pac. 1080; *Bibb* v. *Allen,* 149 U. S. 481, 37 L. ed. 819, 13 Sup. Ct. Rep. 950; *McBratney* v. *Chandler,* 22 Kan. 692, 31 Am. Rep. 213; *Couch* v. *Hutchinson,* 2 Ala. App. 444, 57 So. 75; *Anderson* v. *Carlson,* 99 Ill. App. 514. It is apparent, therefore, that the jury should have been instructed that the defendant had assumed and should carry the burden of this issue, which, as we have seen, became the only issue in the case. Of course, where there are several issues, the ultimate burden is upon the plaintiff to establish his case. *Sullivan* v. *Capital Traction Co.* 34 App. D. C. 358. In *Central Vermont R. Co.* v. *White,* 238 U. S. 507, 512, 59 L. ed. 1433, 1436, 35 Sup. Ct. Rep. 865, Ann. Cas. 1916B, 252, 9 N. C. C. A. 265, it was stated "that the United States courts have uniformly held that as a matter of general law the burden of proving contributory negligence is on the defend-

ant," but by that expression the court did not intend to intimate that on the whole case the burden was not upon the plaintiff.

The judgment must be reversed, with costs, and the cause remanded for further proceedings.      *Reversed and remanded.*

The opinion of the Court on a rehearing was delivered by Mr. Justice ROBB, April 23, 1917:

A rehearing was ordered in this case because of the decision in *Dunbar* v. *Dunbar*, 190 U. S. 340, 47 L. ed. 1084, 23 Sup. Ct. Rep. 757, which did not come to the court's attention until after the original opinion was rendered.

In the *Dunbar Case* the husband lived in Ohio and the wife in Massachusetts. The husband sent an attorney to inform his wife that he was about to seek a divorce from her. "The purpose of the visit of the attorney was to obtain some assurance from her that she would not contest the case, and if she did not that the husband would make provision for aiding in the support of herself and her sons until they arrived of age. The wife denied any intended desertion of her husband, but the result of the negotiations, after the wife had taken counsel of friends, was to give assurance to the attorney that no defense would be interposed if he made some suitable provision for herself and her children." A divorce subsequently was obtained by the husband on the ground of desertion, the wife making no defense. "After the divorce the husband sent to a friend of his wife, to be delivered to her in performance of his agreement, a written contract," in which he bound himself to pay her a stated sum so long as she remained unmarried. Some six years thereafter, when payments had become in arrears, a dispute arose as to the validity of the agreement. Thereupon another and similar contract was entered into, and payments were made as called for in that contract until the husband was adjudged a bankrupt. The court held that as to the amount payable to the wife for her own support, it was not a contingent liability provable under the Bankruptcy Act, and that the contract was not of such a nature as would permit the obligor to be discharged from the obligations thereof by a discharge

in bankruptcy. In the opinion the court said: "Had the provisions of this contract, so far as contracting to pay money for the support of his wife is concerned, been embodied in the decree of divorce which the husband obtained from his wife in Ohio on the ground of desertion, the liability of the husband to pay the amount as alimony, notwithstanding his discharge in bankruptcy, cannot be doubted. *Audobon* v. *Schufeldt,* 181 U. S. 575, 45 L. ed. 1009, 21 Sup. Ct. Rep. 735. We are not by any means clear that the same principle ought not to govern a contract of this nature when, although the judgment of divorce is silent upon the subject, it is plain that the contract was made with reference to the obligations of the husband to aid in the support of his wife, notwithstanding the decree."

The majority of the court are of opinion that the decision in the Dunbar Case is in no way controlling here. This because the point here in issue was not there raised and because, in their view, it was not there involved. They attach importance to the fact that the real contract under consideration in that case was one made in compromise of the original agreement. In other words, whatever infirmity was attached to the original contract was done away with, in their view, when the parties entered into the compromise agreement. The majority of the court also attach importance to the fact that the courts of California, where the contract between the parties to this suit was delivered to appellant, do not countenance agreements having for their object the dissolution of the marriage contract. *Pereira* v. *Pereira,* 156 Cal. 1, 23 L.R.A.(N.S.) 880, 134 Am. St. Rep. 107, 103 Pac. 488; *Loveren* v. *Loveren,* 106 Cal. 512, 39 Pac. 801; *Beard* v. *Beard,* 65 Cal. 354, 4 Pac. 229.

Mature reflection, in the light of the decision in the Dunbar Case, has convinced me that public policy does not demand that the court refuse to recognize the contract between these parties. *Snow* v. *Gould,* 74 Me. 540, 43 Am. Rep. 604; *Galusha* v. *Galusha,* 116 N. Y. 635, 6 L.R.A. 487, 15 Am. St. Rep. 453, 22 N. E. 1114; *Ham* v. *Twombly,* 181 Mass. 170, 63 N. E. 336; *Erwin* v. *Erwin* (1897) — Tex. Civ. App. —, 40 S. W. 53. They became husband and wife, and the conclusion is irresistible from the evidence that they would have remained so

to this day but for the conduct of the appellee. He soon tired of appellant, became interested in another, and desired a divorce. The appellant remonstrated, and it is apparent, even from appellee's testimony, that she did not consent to obtain a divorce from him until all hope of reconciliation was gone. So far as the record discloses, there was ground for the divorce, and had the agreement as to alimony been incorporated in the decree, the divorce could not have been impeached, except by a direct proceeding to reverse or annul it. *Julier* v. *Julier,* 62 Ohio St. 90, 78 Am. St. Rep. 697, 56 N. E. 661.

In my view, no importance was attached to the compromise agreement in *Dunbar* v. *Dunbar.* As I read that decision, the second agreement is considered merely as a recognition of the first; that is, as an agreement by a husband to assume a duty which the law requires of him,—the support of his wife. As the opinion in that case was written only two years after the decision in *McMullen* v. *Hoffman,* 174 U. S. 639, 43 L. ed. 1117, 19 Sup. Ct. Rep. 839, and by the same justice, I think it must be assumed that the court *sua sponte* would have refused to recognize the contract had it been regarded as against public policy.

The original opinion and judgment in this case must stand, and it is so ordered.